1   JAMES R. MCGUIRE (BAR NO. 189275)
    JMcGuire@mofo.com
2   SARAH E. GRISWOLD (BAR NO. 240326)
    SGriswold@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone:     415.268.7000
5   Facsimile:     415.268.7522

6   ROBERT S. STERN (BAR NO. 68240)
    RStern@mofo.com
7   SYLVIA RIVERA (BAR NO. 223203)
    SRivera@mofo.com
8   MORRISON & FOERSTER LLP
    555 West Fifth Street
9   Los Angeles, CA  90013-1024
    Telephone:     213.892.5200
10  Facsimile:     213.892.5454

11  Attorneys for Defendant
    JPMORGAN CHASE BANK, N.A.,
12  *Erroneously sued as*
    JPMORGAN CHASE BANK dba CHASE
13  AUTOMOTIVE FINANCE

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                  SAN JOSE DIVISION

17

18  MARIA I. IRIAS, individually, on behalf of the      Case No.    08-CV-3099 JW
    general public, and on behalf of all others
19  similarly situated,                                    [CLASS ACTION]

20                  Plaintiff,                          **DEFENDANT JPMORGAN
                                                        CHASE BANK, N.A.'S NOTICE
21           v.                                         OF MOTION AND MOTION TO
                                                        DISMISS COMPLAINT AND
22  JPMORGAN CHASE BANK dba CHASE                       MEMORANDUM OF POINTS
    AUTOMOTIVE FINANCE; and DOES 1 through              AND AUTHORITIES IN
23  50, inclusive,                                      SUPPORT THEREOF
                                                        [Fed. R. Civ. P. 12(b)(6)]**
24                  Defendants.
                                                        Hearing Date:  October 27, 2008
25                                                      Time:  9:00 a.m.
                                                        Place:  Courtroom 8
26
                                                        Honorable James Ware
27

28
    DEFENDANT JPMORGAN CHASE BANK, N.A.'S
    MOTION TO DISMISS - Case No. 08-CV-3099 JW
    la-983546

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on October 27, 2008, at 9:00 a.m. or as soon thereafter as

4

the matter may be heard in the Courtroom of the Honorable James Ware, in the United States

5

Courthouse located at 2112 Robert F. Peckham Federal Building and United States Courthouse,

6

280 South First Street San Jose, California 95113, California, Defendant JPMorgan Chase Bank,

7

N.A. (hereinafter "Chase"), sued erroneously as "JPMorgan Chase Bank dba Chase Automotive

8

Finance," will, and hereby does, move to dismiss the Complaint filed by plaintiff Maria I. Irias on

9

the grounds that plaintiff's Complaint fails to state a claim upon which relief may be granted under

10

Rule 12(b)(6) of the Federal Rules of Civil Procedure.

11

The Motion to Dismiss is based on this Notice, the accompanying Memorandum of Points

12

and Authorities, the concurrently-filed Request for Judicial Notice, all pleadings, records, and

13

papers on file in this action, and such further evidence and argument as may be presented to the

14

Court at the hearing of this motion.

15

Dated: July 10, 2008

ROBERT S. STERN
JAMES R. McGUIRE

16

SARAH E. GRISWOLD
SYLVIA RIVERA

17

MORRISON & FOERSTER LLP

18

19

By: ___/s/ James R. McGuire_____
James R. McGuire

20

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.,

21

*Erroneously sued as*
JPMORGAN CHASE BANK dba

22

CHASE AUTOMOTIVE FINANCE

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES...................................................................................................ii

INTRODUCTION ............................................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ............................................................................. 2

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.      FEDERAL LAW PREEMPTS ALL CLAIMS ASSERTED IN THE
        COMPLAINT............................................................................................................ 4

        A.      Federal Law Preempts State Laws That Interfere with a National Bank's
                Authorized Activities ..................................................................................... 4

        B.      Federal Law Preempts the Application of Rees-Levering's Post-
                Repossession Notice Requirements To Chase's Lending Operations.................... 6

        C.      The Complaint Should Be Dismissed in Its Entirety Because All Its Causes
                of Action Rely on the Application of Rees-Levering to Chase............................ 10

        D.      The State Law Causes of Action Are Preempted Notwithstanding that
                Chase Acquired the Contract By Assignment ..................................................... 11

        E.      The FTC Holder Rule Does Not Impose A Contractual Obligation to
                Comply With A Preempted Statute ..................................................................... 15

        F.      Preemption of Plaintiff's Claims is Consistent with Congressional Intent ........... 16

II.     PLAINTIFF LACKS STANDING TO ASSERT HER UCL CLAIM ............................ 16

        A.      The Complaint Fails Adequately to Allege an Injury in Fact and a Loss of
                Money or Property........................................................................................... 16

        B.      Plaintiff Fails to Allege Causation as Required by the UCL................................ 17

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE
        REES-LEVERING ACT ............................................................................................ 18

        A.      No Private Right of Action Is Available for Violation of Rees-Levering's
                Post-Repossession Notice Requirements ............................................................ 18

        B.      Even if There Were a Private Right of Action for Violation of Rees-
                Levering's Post-Repossession Notice Requirements, Plaintiff Fails to State
                a Claim ......................................................................................................... 20

IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR CONVERSION.................... 21

V.      THE COMPLAINT FAILS TO STATE A CLAIM FOR DECLARATORY
        RELIEF ................................................................................................................... 22

VI.     THE LITIGATION PRIVILEGE BARS THE COMPLAINT ........................................ 23

CONCLUSION ................................................................................................................. 25

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

CASES

4

*Aaron v. Aguirre,*
   No. 06-CV-1451, 2007 U.S. Dist. LEXIS 16667 (S.D. Cal. Mar. 8, 2007) ........................... 19

5

*Abel v. KeyBank USA, N.A.,*
   313 F. Supp. 2d 720 (N.D. Ohio 2004) ............................................................... 9, 16

6

7

*Aetna Life Ins. Co. v. Haworth,*
   300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617 (1937) ................................................. 22

8

9

*Am. Bankers Ass'n v. Lockyer,*
   239 F. Supp. 2d 1000 (E.D. Cal. 2002) ................................................................. 16

10

*American Airlines, Inc. v. Wolens,*
   513 U.S. 219 (1995) ....................................................................................... 14

11

12

*Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.,*
   168 F.3d 1362 (D.C. Cir. 1999) ........................................................................ 15

13

14

*Aronson v. Kinsella,*
   58 Cal. App. 4th 254 (1997) ............................................................................. 24

15

16

*AVCO Fin. Servs. v. Cruz (In re Cruz),*
   198 B.R. 330 (S.D. Cal. 1996) .......................................................................... 21

17

*Aydin Corp. v. Union of India,*
   940 F.2d 527 (9th Cir. 1991) ............................................................................ 22

18

19

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1988) .............................................................................. 3

20

*Bank of Am. v. City and County of San Francisco,*
   309 F.3d 551 (9th Cir. 2002) ...................................................................... 4, 5, 6

21

22

*Barnett Bank, N.A. v. Nelson,*
   517 U.S. 25 (1996) ............................................................................... 5, 6, 12

23

24

*Bell Atlantic Corp. v. Twombly,*
   __ U.S. __, 127 S. Ct. 1955 (2007) ..................................................................... 3

25

*Beneficial Nat'l Bank v. Anderson,*
   539 U.S. 1 (2003) .......................................................................................... 13

26

27

*Blue v. City of Los Angeles,*
   137 Cal. App. 4th 1131 (2006) ......................................................................... 20

28

*Boudette v. Barnette*,
   923 F.2d 754 (9th Cir. 1991) ................................................................................................ 20

*Cairns v. Franklin Mint Co.*,
   24 F. Supp. 2d 1013 (C.D. Cal. 1998) ..................................................................................... 3

*Cargill Inc. v. Progressive Dairy Solutions, Inc.*,
   No. CV-F-07-0349, 2008 U.S. Dist. LEXIS 46972 (E.D. Cal. May 29, 2008) ...................... 24

*Cerra v. Blackstone*,
   172 Cal. App. 3d 604 (1985) ................................................................................................. 22

*Conley v. Gibson*,
   355 U.S. 41 (1957) .................................................................................................................. 4

*County of Los Angeles v. Ferguson*,
   94 Cal. App. 3d 549 (1979) ................................................................................................... 16

*Crusader Ins. Co. v. Scottsdale Ins. Co.*,
   54 Cal. App. 4th 121 (1997) .................................................................................................. 19

*Faurot v. Barton*,
   2007 U.S. Dist. LEXIS 78907 (E.D. Nov. 28, 2007) ............................................................ 23

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) ................................................................................................... 2

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982) ......................................................................................................... 6, 13

*First Nat'l Bank v. California*,
   262 U.S. 366 (1923) ................................................................................................................ 5

*Fitzpatrick v. Gates*,
   No. CV 00-04191, 2007 U.S. Dist. LEXIS 13774 (C.D. Cal. April 19, 2001) ...................... 23

*Flagg v. Yonkers Savs. & Loan Ass'n, FA*,
   396 F.3d 178 (2d Cir. 2005) .................................................................................................. 14

*Flennaugh v. Heinrich*,
   89 Cal. App. 2d 214 (1948) ................................................................................................... 22

*Franklin Nat'l Bank v. New York*,
   347 U.S. 373 (1954) .............................................................................................................. 16

*Gavey Prop./762 v. First Fin. Sav. & Loan Ass'n.*,
   845 F.2d 519 (5th Cir. 1988) ................................................................................................. 14

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008) ........................................................................................... 16, 17

*Hartford Fin. Corp. v. Burns,*
  96 Cal. App. 3d 591 (1979).............................................................................21

*Hillsborough County v. Automated Med. Labs., Inc.,*
  471 U.S. 707 (1985) ......................................................................................6

*Juarez v. Arcadia Fin., Ltd.,*
  152 Cal. App. 4th 889 (2007)...........................................................................8

*Kashian v. Harriman,*
  98 Cal. App. 4th 892 (2002)......................................................................24, 25

*Knoell v. Petrovich,*
  76 Cal. App. 4th 164 (1999)......................................................................24, 25

*Laster v. T-Mobile United States, Inc.,*
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) ...........................................................17

*Lerette v. Dean Witter Organization, Inc.,*
  60 Cal. App. 3d 573 (1976)......................................................................24, 25

*Lopez v. GMAC Mortg. Corp.,*
  2007 U.S. Dist. LEXIS 84004 (N.D. Nov. 1, 2007)...........................................22

*Lucht v. Encompass Corp.,*
  491 F. Supp. 2d 856 (S.D. Iowa 2007) ..............................................................3

*Madrid v. Perot Sys. Corp.,*
  130 Cal. App. 4th 440 (2005)..........................................................................17

*Marquette Nat'l Bank v. First of Omaha Serv. Corp.,*
  439 U.S. 299 (1978) ...................................................................................4, 5

*Martinez v. Wells Fargo Bank, N.A.,*
  No. 06-C-03327 RMW, 2007 U.S. Dist. LEXIS 27388 (N.D. Cal. Mar. 30, 2007) ...........3, 14

*Matoff v. Brinker Rest. Corp.,*
  439 F. Supp. 2d 1035 (C.D. Cal. 2006) ...........................................................19

*MGIC Indem. Corp. v. Weisman,*
  803 F.2d 500 (9th Cir. 1986) ...........................................................................2

*MGM Grand Hotel, Inc. v. Imperial Glass Co.,*
  533 F.2d 486 (9th Cir. 1976)............................................................................8

*Moradi-Shalal v. Fireman's Fund Ins. Companies,*
  46 Cal. 3d 287 (1988)...................................................................................19

*Morales v. Cooperative of Am. Physicians, Inc.,*
  180 F.3d 1060 (9th Cir. 1999).........................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*MorEquity, Inc. v. Naeem,*
  118 F. Supp. 2d 885 (N.D. Ill. 2000) .................................................................................. 14

*National R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,*
  414 U.S. 453, 94 S. Ct. 690 (1974) ..................................................................................... 20

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,*
  513 U.S. 251 (1995) ......................................................................................................... 4, 7

*O'Brien v. Camisasca Auto. Mfg., Inc.,*
  161 Cal. App. 4th 388 (2008) .............................................................................................. 17

*People v. Narron,*
  192 Cal. App. 3d (1987) ...................................................................................................... 20

*Philips Med. Capital, LLC v. Medical Insights Diagnostices,*
  471 F. Supp. 2d 1035 (N.D. Cal. 2007) ............................................................................... 23

*Riggs v. Anthony Auto Sales, Inc.,*
  32 F. Supp. 2d 411 (W.D. La. 1998) .................................................................................... 15

*Rose v. Chase Bank USA, N.A.,*
  513 F.3d 1032 (9th Cir. 2008) .................................................................................. 4, 8, 9, 10

*Rubin v. Green,*
  4 Cal. 4th 1187 (1993) ......................................................................................................... 24

*Rusheen v. Cohen,*
  37 Cal. 4th 1048 (2006) ....................................................................................................... 25

*Silberg v. Anderson,*
  50 Cal. 3d 205 (1990) .......................................................................................................... 24

*Silvas v. E*Trade Mortg. Corp.,*
  514 F.3d 1001 (9th Cir. 2008) ............................................................................................... 8

*Watters v. Wachovia Bank, N.A.,*
  __ U.S. __, 127 S. Ct. 1559 (2007) ............................................................................. 1, 6, 13

*Wells Fargo Bank, N.A. v. Boutris,*
  419 F.3d 949 (9th Cir. 2005) ........................................................................................... 5, 14

*Wells v. Chevy Chase Bank, F.S.B.,*
  832 A.2d 812 (Md. 2003), *cert. denied,* 541 U.S. 983 (2004) ............................................. 14

**STATUTES**

12 U.S.C. § 21 *et seq.* ............................................................................................................ 4

12 U.S.C. § 24 ...................................................................................................5, 6, 12

12 U.S.C. § 93a ........................................................................................................5

*28 U.S.C. § 2201* ....................................................................................................22

28 U.S.C. § 2201(a) .................................................................................................22

Bus. & Prof. Code § 17200 *et seq.* ....................................................................3, 16

Cal. Civ. Code § 47(b) ..........................................................................................2, 3

Cal. Civ. Code § 47(b)(2) ........................................................................................24

Cal. Civ. Code § 1788 *et seq.* .................................................................................11

Cal. Civ. Code § 2983 ..............................................................................................18

Cal. Civ. Code § 2983.2 .............................................................................................8

Cal. Civ. Code § 2983.8 .............................................................................................8

Cal. Civ. Code § 2983.2(a) ........................................................................11, 13, 19

Cal. Civ. Code § 2983.2(a)(3) ..................................................................................13

Cal. Civ. Code § 2983.2(b) .......................................................................................13

Cal. Civ. Code § 2983.4 ............................................................................................18

Cal. Civ. Code § 2983.7(c) .......................................................................................18

Cal. Civ. Code § 2983.8 ............................................................................................19

Cal. Civ. Code § 2984.4(a) .......................................................................................18

Conn. Gen. Stat. 36a-785(e) .....................................................................................13

R.C. § 1317.16(b) .....................................................................................................13

**OTHER AUTHORITIES**

12 C.F.R. § 7.4008 ............................................................................................8, 9, 13

12 C.F.R. § 7.4008(a) ...............................................................................................12

12 C.F.R. § 7.4008(d) .............................................................................................6, 8

12 C.F.R. § 7.4008(d)(1) ............................................................................................7

12 C.F.R. § 7.4008(d)(2) ............................................................................................7

1

12 C.F.R. § 560.2(b)(9) ........................................................................................... 8

2

16 C.F.R. § 433.2 ................................................................................................... 15

3

66 Fed. Reg. 28593, 28595 (2001) ......................................................................... 5

4

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2, 3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3       The Complaint filed by Plaintiff Maria I. Irias asks this Court to impose upon Chase

4   onerous disclosure requirements that would strip Chase of its most fundamental right as a secured

5   lender following Plaintiff's contractual failure to repay her debt: the right to obtain repayment by

6   seizing and selling the collateral and thereafter recovering from Plaintiff the remaining balance on

7   the debt. All of Plaintiff's claims are based on allegations that Chase failed to comply with the

8   specific notice and disclosure requirements set forth in California's Rees-Levering Motor Vehicle

9   Sales and Finance Act ("Rees-Levering"), Cal. Civ. Code § 2981 *et seq.* Plaintiff's Complaint

10  fails, however, because federal law preempts the use of state law—such as Rees-Levering—to

11  impose preconditions on the exercise of Chase's federally-granted banking powers.

12      Chase is a national banking association, organized and operating under the National Bank

13  Act ("NBA"), and subject to primary oversight by the Office of the Comptroller of the Currency

14  ("OCC"). The NBA and regulations promulgated by the OCC expressly address—and expressly

15  preempt—the state laws Plaintiff seeks to enforce against Chase. Specifically, the NBA and OCC

16  regulations preempt any use of state law to impair, prohibit or condition Chase's lending practices,

17  including those concerning (i) notice and disclosure provisions, (ii) terms of credit, and

18  (iii) security property. The attempted application of Rees-Levering to Chase here interferes with

19  each of these categories by purporting to eliminate Chase's right to recover deficiency judgments

20  for monies it is owed absent strict adherence to the statute's requirements. Because each of

21  Plaintiff's causes of action is predicated on alleged violations of Rees-Levering, and because

22  "federal law [is] supreme over state law with respect to national banking," *Watters v. Wachovia*

23  *Bank, N.A.*, __ U.S. __, 127 S. Ct. 1559, 1566 (2007), the entire Complaint necessarily fails.

24      Even if federal law did not preempt the complaint, each of Plaintiff's claims fails for

25  separate and independent reasons. First, Plaintiff's claim for violation of the UCL is fatally

26  deficient because she lacks standing to pursue the claim. Second, her "cause of action" for

27  violation of Rees-Levering fails because no such cause of action is recognized under California

28  law. Third, Plaintiff cannot maintain a claim for conversion because she fails to allege that Chase

1   refused a demand to return the vehicle to her following repossession.  Fourth, Plaintiff's claim for

2   declaratory relief is entirely speculative and impermissibly seeks a remedy for past, rather than

3   future, wrongs.  And finally, all of her claims fail because they are based on communications

4   protected by the litigation privilege of section 47(b) of the California Civil Code.

5        For all of these reasons, Chase respectfully requests that the Court dismiss the Complaint

6   with prejudice.

7                              **ALLEGATIONS OF THE COMPLAINT**

8        Plaintiff purchased a vehicle from a dealership on December 14, 2005.  The dealership

9   assigned the conditional sales contract through which she financed the purchase to Chase.  (Compl.

10  ¶ 7.)  Chase is a national banking association organized under the National Bank Act with its main

11  office in the State of Ohio.  (Request for Judicial Notice ("RJN"), ¶ 1, Exs. A-B.)[1]  The contract

12  expressly provides that it is governed by federal law and California law.  (Declaration of Jori K.

13  Christopher, Ex. A at p. 5 ¶ 6 & Ex. B ¶ 6.)[2]  Approximately two years after she purchased the

14  vehicle, Plaintiff defaulted and Chase repossessed the vehicle.  (Compl. ¶ 8.)  The Complaint does

15  not challenge the propriety of the repossession.

16       Following the repossession, on October 31, 2007, Chase sent Plaintiff a notice advising

17  her that the vehicle had been repossessed and would be sold, and that she would be liable for any

18  deficiency balance plus interest from the date of sale to the date of entry of judgment, unless she

19  took certain actions.  (*Id.* ¶ 8, Ex. A.)  Plaintiff's contract balance at the time was approximately

20  $14,000.  (*Id.*, Ex. A.)  The notice expressly warned Plaintiff, in all capital letters, that she "MAY

21  BE SUBJECT TO SUIT AND LIABILITY IF THE AMOUNT OBTAINED UPON

22  DISPOSITION OF THE VEHICLE IS INSUFFICIENT TO PAY THE CONTRACT BALANCE

23  AND ANY OTHER AMOUNTS DUE."  (*Id.*, Ex. A.)  Notwithstanding the notice, Plaintiff failed

24  [1]  The Court may take judicial notice of matters of public record outside the pleadings in
25  considering a motion to dismiss pursuant to Rule 12(b)(6).  *MGIC Indem. Corp. v. Weisman*, 803
    F.2d 500, 504 (9th Cir. 1986).

26  [2] Although the contract was not attached to the Complaint, because the Complaint cites to its terms,
27  the Court may consider the full text of the document without converting the motion to dismiss into
    one for summary judgment.  *See Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995).

28

1  to payoff the contract balance, bring her account current, or otherwise take measures to avoid the

2  sale of the vehicle.  As a result, Chase sold the vehicle and assessed a deficiency balance against

3  Plaintiff because the proceeds of the sale failed to cover her outstanding balance.  (*Id.* ¶ 9.)

4        The Complaint arises from the notice of intent to dispose of the vehicle by sale ("NOI")

5  that Chase provided to Plaintiff.  (Compl., Ex. A.)  Plaintiff asserts that the NOI was deficient

6  because it: (i) did not itemize any additional vehicle storage fees, interest, and payments that could

7  come due after the date of the NOI; (ii) did not set forth the requirement of paying a $15 fee to a

8  local law enforcement agency before recovering the vehicle; (iii) did not contain properly detailed

9  address information; and (iv) allegedly overstated Plaintiff's outstanding contract balance.  (*Id.*

10  ¶ 16.)  Based on these alleged deficiencies in the NOI, Plaintiff contends that Chase's assessment

11  of a deficiency balance following the sale of the vehicle was wrongful.  Plaintiff does not, however,

12  allege that she actually paid any portion of that deficiency balance.  Nor does Plaintiff allege that

13  she ever attempted to redeem the vehicle or to reinstate the contract prior to the post-repossession

14  sale of the vehicle.

15        Plaintiff originally filed her Complaint on May 2, 2008, in California state court for the

16  County of Santa Clara.  She asserted causes of action for violation of Rees-Levering, violation of

17  California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, breach of contract, and

18  conversion, and asserted a claim for declaratory relief, on her own behalf and on behalf of a

19  putative class of plaintiffs.  Chase timely removed the action to this Court on June 26, 2008.

20                                   **LEGAL STANDARD**

21        A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

22  *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1023 (C.D. Cal. 1998).  Dismissal may be based

23  either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under

24  a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

25  Dismissal is appropriate where federal law preempts state-law claims.  *See Martinez v. Wells Fargo*

26  *Bank, N.A.*, No. 06-C-03327 RMW, 2007 U.S. Dist. LEXIS 27388 (N.D. Cal. Mar. 30, 2007).

27        The Supreme Court, in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955

28  (2007), recently effectuated a "major change" in the pleading standard.  *Lucht v. Encompass Corp.*,

1   491 F. Supp. 2d 856, 861 (S.D. Iowa 2007).  Rejecting the traditional rule, from *Conley v. Gibson*,

2   355 U.S. 41, 47 (1957), that "a complaint should not be dismissed for failure to state a claim unless

3   it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

4   would entitle him to relief," the Court held that a plaintiff must plead actual facts, not just

5   conclusory assertions.  A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

6   relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's

7   elements will not do.  Factual allegations must be enough to raise a right to relief above the

8   speculative level . . . ."  *Bell Atlantic Corp.*, 127 S. Ct. at 1959 (interpreting the requirements of

9   Fed. R. Civ. P. 8) (alteration in original).

10                                                    **ARGUMENT**

11  **I.       FEDERAL LAW PREEMPTS ALL CLAIMS ASSERTED IN THE COMPLAINT.**

12            Federal preemption is a question of law and is properly resolved at the pleading stage.

13  *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032 (9th Cir. 2008).  Every cause of action Plaintiff

14  asserts against Chase is entirely based on her contention that Chase failed to comply with the post-

15  repossession notice requirements set forth in Rees-Levering.  The National Bank Act, 12 U.S.C.

16  § 21 *et seq.*, and regulations promulgated thereunder by the OCC, however, preempt application of

17  Rees-Levering to Chase, a national bank.  Thus, all of Plaintiff's claims are deficient as a matter of

18  law, and this motion should be granted.

19

20            **A.       Federal Law Preempts State Laws That Interfere with a National Bank's
                          Authorized Activities.**

21            The federal government's role in regulating national banks is extensive and unique, and

22  generally operates to the exclusion of state law.  *Bank of Am. v. City and County of San Francisco*,

23  309 F.3d 551, 561 (9th Cir. 2002).  Congress enacted the National Bank Act ("NBA"), 12 U.S.C.

24  § 21 *et seq.*, in 1864 to establish a national banking system free from conflicting state regulation.

25  *See Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314-15 (1978).  To further

26  its vision of a federally-regulated, national banking system, Congress also established the OCC,

27  and charged it with implementing the NBA and regulating the national banks.  *See NationsBank of*

28  *N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256-57 (1995).  Congress also granted

1   the OCC comprehensive rulemaking authority to further the OCC's responsibilities. *See* 12 U.S.C.

2   § 93a ("Except to the extent that authority to issue such rules and regulations has been expressly

3   and exclusively granted to another regulatory agency, the Comptroller of the Currency is

4   authorized to prescribe rules and regulations to carry out the responsibilities of the office.").

5          "The supremacy of the federal government in regulating national banks has long been

6   recognized." *Bank of Am.*, 309 F.3d at 561; *see also Marquette Nat'l Bank*, 439 U.S. at 308

7   (national banks are "instrumentalit[ies] of the Federal government, created for a public purpose,

8   and . . . subject to the paramount authority of the United States.") (citation and internal quotations

9   omitted). Through the NBA, Congress has authorized national banks to exercise "all such

10  incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24

11  (Seventh). The Supreme Court has consistently recognized that this is a "grant[] of authority not

12  normally limited by, but rather ordinarily pre-empting, contrary state law." *Barnett Bank, N.A. v.*

13  *Nelson*, 517 U.S. 25, 32 (1996). Any attempt by States to "control the conduct of [national bank]

14  affairs is void whenever it conflicts with the laws of the United States or frustrates the purposes of

15  the national legislation or impairs the efficiency of the [national] bank to discharge the duties for

16  which it was created." *First Nat'l Bank v. California*, 262 U.S. 366, 369 (1923). So strong is the

17  tenet that federal rather than state law should regulate national banks, "the usual presumption

18  against federal preemption of state law is inapplicable." *Wells Fargo Bank, N.A. v. Boutris*,

19  419 F.3d 949, 956 (9th Cir. 2005).

20         As the Supreme Court has clarified, the question of whether a federal enactment preempts

21  a state law "is basically one of congressional intent. Did Congress, in enacting the federal statute,

22  intend to exercise its constitutionally delegated authority to set aside the laws of a State? If so, the

23  Supremacy Clause requires courts to follow federal, not state, law." *Barnett Bank*, 517 U.S. at 30.

24  Federal preemption may occur expressly, by implication, or when state law conflicts with federal

25  law. *Bank of Am.*, 309 F.3d at 558. In the banking context, conflict preemption occurs when

26  application of state law would prevent, condition, or significantly interfere with a national bank's

27  exercise of its federally-authorized banking powers. *Id.* at 558-59; *Barnett Bank*, 517 U.S. at 33;

28  66 Fed. Reg. 28593, 28595 (2001) ("Federal law preempts not only state laws that purport to

1  prohibit a national bank from engaging in an activity permissible under Federal law but also state

2  laws that condition or confine the exercise by a national bank of its express or incidental powers.").

3       The preemptive effect of federal regulations is equally well established.  The Supreme

4  Court has "held repeatedly that state laws can be pre-empted by federal regulations as well as by

5  federal statutes." *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

6  Indeed, "[f]ederal regulations have no less pre-emptive effect than federal statutes." *Fidelity Fed.*

7  *Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  Courts must "equate the [regulating

8  agency's] expression of intent with the requisite congressional intent." *Id.* at 150 (citation omitted).

9  Thus, in the banking context, the NBA and OCC regulations "together preempt conflicting state

10  limitations on the authority of national banks." *Bank of Am.*, 309 F.3d at 564; *Watters*, 127 S. Ct.

11  at 1572-73.

12
13       **B.**    **Federal Law Preempts the Application of Rees-Levering's Post-Repossession Notice Requirements To Chase's Lending Operations.**

14       The NBA expressly grants national banks, like Chase, the authority to carry on "the

15  business of banking," which includes "loaning money on personal security." 12 U.S.C. § 24

16  (Seventh).  The OCC has determined that this lending function of national banks includes the

17  purchase of retail installment sale contracts.  OCC Interpretive Letter #1095 at 3 (Feb. 27, 2008)

18  ("a national bank owned RIC is the equivalent of a national bank loan."); OCC Interpretive Letter

19  #416 (Feb. 16, 1988) (referring to motor vehicle retail installment sales contracts as "loan assets.")

20       National banks may exercise their authorized powers free from state-law restrictions:

21  "where Congress has not expressly conditioned the grant of 'power' upon a grant of state

22  permission, the Court has ordinarily found that no such condition applies." *Barnett Bank*, 517 U.S.

23  at 34.  Recognizing the supremacy of federal law, the OCC has issued regulations clarifying that

24  state laws that attempt to condition or regulate a national bank's lending operations are preempted.

25  *See* 12 C.F.R. § 7.4008(d).  The Supreme Court, in turn, has made it clear that courts must defer to

26  these regulations:  "The Comptroller of the Currency is charged with the enforcement of banking

27  laws to an extent that warrants the invocation of [a rule of deference] with respect to his

28

1    deliberative conclusions as to the meaning of these laws." *NationsBank*, 513 U.S. at 256-57

2    (quotation omitted).

3           As the OCC's regulations expressly provide, state laws that "obstruct, impair, or condition

4    a national bank's ability to fully exercise its Federally authorized non-real estate lending powers

5    are not applicable to national banks." 12 C.F.R. § 7.4008(d)(1). More specifically, section

6    7.4008(d)(2) enumerates examples of authorized lending activities to which state law cannot apply

7    without of necessity interfering impermissibly with a national bank's lending powers:

8           A national bank may make non-real estate loans without regard to state law
            limitations concerning: . . .
9

10          (iv) The **terms of credit**, including the schedule for repayment of principal and
            interest, amortization of loans, balance, payments due, minimum payments, or
11          term to maturity of the loan, including the circumstances under which a loan
            may be called due and payable upon the passage of time or a specified event
            external to the loan; . . .
12
            (vi) **Security** property, including leaseholds; [and]
13

14          (viii) **Disclosure** and advertising, including laws requiring specific statements,
            information, or other content to be included in credit application forms, credit
15          solicitations, billing statements, credit contracts, or other credit-related
            documents.

16
17   12 C.F.R. § 7.4008(d)(2) (emphasis added). The Rees-Levering requirements that Plaintiff seeks to

18   impose on Chase run afoul of each of these specific categories.

19          The application of Rees-Levering's notice requirements here would inject state-law

20   requirements into the "terms of credit" between the parties. There is no more fundamental "term of

21   credit" than the right to obtain repayment of money lent. Application of Rees-Levering, however,

22   would add a term of credit by layering state-imposed requirements upon that right: specifically, as

23   Plaintiff expressly pleads, a lender's right to recover a deficiency balance would be conditioned

24   upon compliance with Rees-Levering. Section 7.4008(d)(2)(iv) thus expressly preempts the

25   application of Rees-Levering here.

26          Similarly, application of Rees-Levering would impose detailed "disclosure" requirements

27   upon a national bank. As one court recently summarized:

28          [T]he statute requires that a creditor inform the [borrower] of any amounts the
            [borrower] must pay to the creditor and/or to third parties, and provide the

1

2

3

> [borrower] with the names and addresses of those who are to be paid.  The creditor must also inform the [borrower] regarding any additional monthly payments that will come due before the end of the notice period, as well as of any late fees, or other fees, the amount(s) of these additional payments or fees, and when the additional sums will become due.

4

5

6

7

8

9

10

11

12

13

*Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889, 904-05 (2007).[3]  These disclosures concern, and are required during the midst of, an on-going credit relationship between borrower and creditor:  the borrower's account is in default and the security has been repossessed, but not yet sold.  Under Rees-Levering, the failure to include those detailed disclosures in the NOI *completely eliminates* a creditor's right to recover the outstanding contract balance following the sale of the lawfully repossessed security.  Cal. Civ. Code §§ 2983.2 & 2983.8.  As such, section 7.4008(d)(2)(viii) expressly preempts Rees-Levering's notice requirements.  *See also Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) (holding that 12 C.F.R. § 560.2(b)(9), the OTS analog to section 7.4008(d)(2)(viii), expressly preempts state law claims purporting to regulate disclosures).[4]

14

15

16

17

18

Finally, the application of Rees-Levering's post-repossession notice requirements interferes with a lender's interest in "security property" by restricting a national bank's ability to foreclose upon, sell, and credit the borrower's account with the sale proceeds of the "security property"—the vehicle—and then obtain repayment of the deficiency balance remaining on the contract.  Section 7.4008(d)(2)(vi) thus independently preempts application of Rees-Levering.

19

20

21

22

Case law amply demonstrates the absolute nature of federal preemption under the NBA and section 7.4008(d) of the OCC's regulations where state laws purport to interfere with a national bank's lending activities.  In *Rose*, 513 F.3d 1032, for example, the Ninth Circuit held that the

23

24

[3] While *Juarez* correctly notes that Rees-Levering imposes certain disclosure requirements on creditors, Chase respectfully disputes the correctness of the particular holding of *Juarez* as to what those requirements include, and reserves its right to contest *Juarez* at the appropriate juncture.

25

26

27

[4] In a recent case before the Los Angeles Superior Court, Judge Anthony J. Mohr found that the Ninth Circuit's analysis of the OTS regulation in *Silvas* is equally applicable to section 7.4008 of the OCC regulations.  (RJN, Ex. C.)  This Court may consider Judge Mohr's well-reasoned decision in resolving Chase's motion to dismiss.  *See MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 489 n.5 (9th Cir. 1976) (explaining that state trial court opinion "is persuasive authority in support of the conclusions we reach herein.").

28

1   plaintiff's claims against a national bank for failure to comply with California statutory

2   requirements regarding disclosures on "convenience checks" were preempted.  The court explained

3   that Congress had authorized national banks to loan money, and that "[w]here, as here, Congress

4   has explicitly granted a power to a national bank without any indication that Congress intended for

5   that power to be subject to local restriction, [C]ongress is presumed to have intended to preempt

6   state laws" that impose disclosure requirements purporting to limit that federally-granted power.

7   *Id.* at 1037.  The court concluded that the state statute was expressly preempted by section 7.4008,

8   and, specifically, that the statute impermissibly imposed requirements concerning "[d]isclosure and

9   advertising, including . . . requiring specific statements, information, or other content to be included

10  in . . . credit-related documents," in violation of section 7.4008(d)(2)(viii).  *Rose*, 513 F.3d at 1036.

11          The court in *Abel v. KeyBank USA, N.A.*, 313 F. Supp. 2d 720 (N.D. Ohio 2004), reached a

12  similar conclusion, holding that the NBA and section 7.4008 preempted certain provisions of

13  Ohio's Retail Installment Sales Act that purported to restrict a national bank's ability to collect on

14  outstanding balances.  The court explained that this type of state regulation "significantly

15  interferes" with a national bank's ability to carry out its lending powers, and that the state law is

16  prohibited by section 7.4008(d)(2)(iv), which "indicates that national banks may lend money

17  without regard to state laws imposing requirements as to the terms of credit."  *Id.* at 727-28.

18          The reasoning in *Rose* and *Abel* is directly applicable here.  Chase's automobile lending

19  activities fall squarely within the scope of its federally-granted power to loan money, Congress has

20  indicated no intention that the power be subject to state restriction, and Rees-Levering's post-

21  repossession notice requirements are thus preempted.  *See Rose*, 513 F.3d at 1037.  Furthermore,

22  like the state statute in *Abel*, Rees-Levering's disclosure requirement "significantly interferes" with

23  Chase's ability to carry out its lending powers by limiting and impairing its ability to obtain

24  repayment of outstanding contract balances.  Finally, like the state laws in *Rose* and *Abel*, Rees-

25  Levering impermissibly imposes disclosure requirements on credit-related documents and purports

26  to alter the terms of credit between Chase and its borrowers.  As such, it is expressly preempted by

27  sections 7.4008(d)(2)(viii) and (iv) of the OCC regulations.

28

1         The conclusion that Plaintiff's claims are preempted is inescapable, and Plaintiff cannot

2    rely on section 7.4008(e)'s "savings clause" to revive her claims.  That section provides that certain

3    state laws apply to national banks "to the extent that [such laws] only incidentally affect the

4    exercise of national banks' non-real estate lending powers."  12 C.F.R. § 7.4008(e).  However,

5    where, as here, a state law falls under a category *expressly preempted* by subdivision (d) of the

6    regulation (i.e., laws mandating specific disclosures in credit-related documents, altering the terms

7    of credit, or affecting security property), then the preemption inquiry is complete, and any

8    exclusions set forth in subdivision (e) are irrelevant to the analysis.  *See, e.g., Silvas.*, 514 F.3d

9    1001 (construing analogous OTS regulation); (RJN, Ex. C (concluding that where state law

10    satisfies definition of a restriction expressly preempted by OCC regulation, then preemption

11    analysis ends there)).

12         Furthermore, because Rees-Levering plainly purports to preclude Chase altogether from

13    obtaining any deficiency balance if Chase does not strictly comply with its disclosure requirements,

14    it more than "incidentally" affects Chase's lending operations and thus could not satisfy any

15    exception to preemption set forth in section 7.4008(e).  *See Abel*, 313 F. Supp. 2d at 728

16    (concluding that since state law "more than 'incidentally' affects the lending activities of national

17    banks," none of the exceptions to preemption in 12 C.F.R. § 7.4008(e) could apply).  Thus, Rees-

18    Levering's post-repossession notice requirements remain preempted as applied to a national bank

19    such as Chase.

20          **C.**     **The Complaint Should Be Dismissed in Its Entirety Because All Its Causes of**
                **Action Rely on the Application of Rees-Levering to Chase.**

21

22         The entire Complaint is subject to dismissal because each of Plaintiff's five causes of

23    action is premised entirely on the false notion that Chase was required to comply with Rees-

24    Levering's post-repossession notice requirements.  Where theories of recovery are predicated on an

25    underlying state-law claim that is preempted by federal law, the derivative state-law claims are

26    preempted as well.  *See Rose*, 513 F.3d at 1038 (dismissing all claims under the UCL because the

27    "legal duties that underlie" the claims for "unfair" and "deceptive" business practices are "the same

28    purported duties to disclose . . . that are preempted by the NBA and OCC regulations").

1    Here, every material paragraph of Plaintiff's UCL cause of action that addresses predicate

2    acts references Chase's alleged failure to comply with section 2983.2(a) of Rees-Levering,

3    discusses the allegedly defective NOI, or challenges Chase's attempts to collect deficiency balances

4    that Plaintiff alleges were not lawfully owed due to the alleged failure to comply with Rees-

5    Levering.[5]  (*See* Compl. ¶¶ 31(a)-(m).)  Likewise, Plaintiff's causes of action for breach of contract

6    and conversion are premised entirely on her allegation that Chase's NOI did not comply with

7    section 2983.2(a) of Rees-Levering.  (*Id.* ¶¶ 41-42, 53.)  Finally, the claim for declaratory relief

8    simply incorporates by reference the allegations supporting her claims for violation of Rees-

9    Levering and the UCL, and claims for breach of contract and conversion, and does not allege any

10    new or different facts.  (*See id.* ¶¶ 57-58.)  Because the underlying predicate claim—violation of

11    Rees-Levering—is preempted, the derivative claims for violation of the UCL, breach of contract,

12    conversion, and declaratory relief also fail as a matter of law.

13

14    **D.    The State Law Causes of Action Are Preempted Notwithstanding that Chase Acquired the Contract By Assignment.**

15    Perhaps recognizing the preemptive effect of federal law, the Complaint seemingly asserts

16    that in taking the vehicle contract by assignment, Chase agreed to exclude itself from the broad

17    scope of federal preemption of state laws that purport to interfere with its lending activities.

18    Plaintiff alleges that Chase implicitly agreed to issue an NOI that complied with Rees-Levering

19    because the vehicle contract indicates that the creditor will "provide [the debtor] all notices

20    required by law" following a repossession, and further indicates that the creditor can accelerate the

21    account balance following the debtor's default "subject to any right the law gives [the debtor] to

22

23    _____

24    [5] Even Plaintiff's allegation that Chase's practices are "unlawful" because they constitute a breach of contract and purportedly violate the Rosenthal Fair Debt Collection Practices Act, Civil Code

25    § 1788 *et seq.*, (Compl. ¶ 32) are based exclusively on the assertion that Rees-Levering applies to Chase.  Aside from her allegation that Chase failed to comply with Rees-Levering, the Complaint is bereft of any allegation supporting a claim for violation of Civil Code section 1788 *et seq.*

26    Likewise, she alleges that Chase breached the sale contract by failing to furnish the notice "provided by law," as promised in the contract (*see* Compl. ¶ 15), but *as a matter of law* Chase did

27    not have to comply with Rees-Levering's notice requirements because they are preempted.

28

1   reinstate [the] contract.'"  (Compl. ¶¶ 41-42.)  However, as explained in greater detail below, those

2   unremarkable statements do not resurrect Rees-Levering's post-repossession notice requirements.

3          To be sure, Plaintiff does not—and could not—allege that Chase *explicitly* agreed to be

4   bound by *Rees-Levering's* notice requirements.  She does not allege a violation of a requirement

5   voluntarily assumed by Chase in the contract, but instead alleges a violation of the notice

6   requirements purportedly "required by law" under Rees-Levering.  (*See* Compl. ¶ 41.)  However, it

7   is axiomatic that a particular notice is *not* "required by law" where, as here, it is set forth in state

8   law whose application to Chase is expressly preempted by federal law.

9          Moreover, a national bank does not assume otherwise preempted state law obligations

10  because it acquires a retail installment sale contract by assignment, rather than by originating a loan

11  itself.  National banks are authorized to engage in activities that are part of, or incidental to, the

12  business of banking, which includes "negotiating promissory notes" and "loaning money on

13  personal security."  12 U.S.C. § 24 (Seventh).  The OCC regulations clarify that national banks are

14  expressly authorized to purchase non-real estate loans originated by another entity.  12 C.F.R.

15  § 7.4008(a).  Retail installment sale contracts, when owned by a national bank, are the equivalent

16  of a national bank loan and are treated as such for regulatory purposes.  OCC Interpretive Letter

17  #1095 (Feb. 27, 2008) at 3; OCC Interpretive Letter #416 (Feb. 16, 1988) (referring to motor

18  vehicle retail installment sales contracts as "loan assets.")  Indeed, the contract here expressly

19  contemplated that the dealership would assign it to a financial institution and provided that federal

20  law, plus any applicable California law, governed the contract.  (Christopher Decl., Exs. A-B.)  The

21  ability of national banks to exercise their express power to purchase non-real estate loans, including

22  retail installment sale contracts, would be significantly impaired if they had to comply with state

23  disclosure laws, such as Rees-Levering, that purport to restrict a bank's ability to foreclose upon

24  and sell collateral.  Nowhere do the NBA or OCC regulations indicate any intention to limit the

25  scope of their preemptive power only to specific forms of lending.  Thus, to the extent that a state

26  asserts the right to restrict or condition a national bank's exercise of its federally-granted powers,

27  including the express right to purchase non-real estate loans, that state law is preempted.  *See*

28  *Barnett Bank*, 517 U.S. 25, 33-34.

1    Any other outcome would conflict with the Congressional intent to create a national

2 system of banking free from state regulation.  As the Supreme Court and the OCC have expressly

3 recognized, section 7.4008 was promulgated, in part, because:

> [t]he application of multiple, often unpredictable, different state or local restrictions and requirements prevents [national banks] from operating in the manner authorized under Federal law, is costly and burdensome, interferes with their ability to plan their business and manage their risks, and subjects them to uncertain liabilities and potential exposure.

7 *Watters*, 127 S. Ct. at 1568 n.6 (quoting 69 Fed. Reg. 1904, 1908 (2004)).

8    The implication of Plaintiff's apparent contention that Chase became subject to Rees-

9 Levering as a result of taking the contract by assignment is that Chase must ascertain, monitor, and

10 comply with the disparate laws of all fifty states regarding the repossession and sale of collateral in

11 order to exercise its federally-granted lending powers.  *Compare* Cal. Civ. Code § 2983.2(a)

12 (requiring fifteen days notice of intent to sell collateral) *with* O.R.C. § 1317.16(b) (requiring ten

13 days notice of intent to sell collateral); *compare* Cal. Civ. Code § 2983.2(b) (requiring an

14 accounting of the disposition of sale proceeds only upon debtor's request) *with* Conn. Gen. Stat.

15 36a-785(e) (requiring an accounting within thirty days of resale); *compare* Cal. Civ. Code

16 § 2983.2(a)(3) (providing for ten day extension of the reinstatement or redemption period upon

17 debtor's request) *with* O.R.C. § 1317.16(b) (no provision for extension of time to reinstate or

18 redeem).  But the NBA and OCC regulations were designed to avoid precisely such a hodgepodge

19 of inconsistent state regulation.  *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10 (2003)

20 ("Uniform rules limiting the liability of national banks . . . are an integral part of a banking system

21 that needed protection from 'possible unfriendly State legislation'.") (quotations omitted).

22    Finally, Chase has not contractually waived the preemptive protection of federal law.

23 Although parties are free to incorporate state law in their agreements, they do not opt out of federal

24 preemption altogether by so doing.  Where, as here, the contract does not specifically identify the

25 otherwise preempted state law that a party asserts was purportedly incorporated into the contract,

26 then that state law is preempted.  *See, e.g., de la Cuesta*, 458 U.S. at 158 n.12 (1982) (financial

27 institution did not agree to be bound by state law where contract provided that it was to be

28 "governed by the 'law of the jurisdiction' in which the property is located [because] the 'law of the

1   jurisdiction' includes federal as well as state law"); *Flagg v. Yonkers Savs. & Loan Ass'n, FA*,

2   396 F.3d 178, 186 (2d Cir. 2005) (where state law is otherwise preempted, "contracts may

3   incorporate particular laws as contract terms, [but] the contract must do so with specificity.");

4   *Gavey Prop./762 v. First Fin. Sav. & Loan Ass'n.*, 845 F.2d 519, 520, 523 (5th Cir. 1988) (parties

5   did not "contract[] out of the federal provision by specifically choosing Texas law in their loan

6   agreements" when clause stated that interest rates were governed by "applicable laws of the state of

7   Texas and the United States of America"); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 898 n.5

8   (N.D. Ill. 2000) (rejecting contention that state law applied to agreement containing provision that

9   security interest would be governed by "federal law and the law of the jurisdiction in which the

10  property is located").  The OCC has primary authority to regulate the lending operations of national

11  banks and only it can waive that authority.  In *Wells Fargo Bank, N.A. v. Boutris*, for example, the

12  court rejected the contention of state banking regulators that the plaintiff national bank had waived

13  federal preemption by agreeing to be licensed under state laws.  265 F. Supp. 2d 1162, 1163 (E.D.

14  Cal. 2003), *aff'd in part and rev'd in part*, 419 F.3d 949 (9th Cir. 2005).  If obtaining a state license

15  does not voluntarily waive preemption, then the vague and unexceptional provision that Chase will

16  furnish the notice "required by law" before disposing of a vehicle surely does not either.[6]

17  _____

18  [6] Plaintiff may attempt to rely on *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), and
    *Wells v. Chevy Chase Bank, F.S.B.*, 832 A.2d 812 (Md. 2003), *cert. denied*, 541 U.S. 983 (2004), to

19  support her contention that Chase agreed to abide by Rees-Levering's post-repossession notice
    requirements, but any such reliance is misplaced.  In *Wolens*, the plaintiffs alleged that the

20  defendant airline had retroactively devalued frequent flyer benefits in violation of the contract that
    the plaintiffs held with the airline regarding those benefits.  The court was presented with the
    question of whether a federal law could preempt *contract terms themselves*, as opposed to state-

21  imposed obligations, and the decision is thus inapplicable to Plaintiff's claims here. *See Wolens*,
    513 U.S. at 232-33 (holding that "[t]he [Airline Deregulation Act] permits state-law-based court

22  adjudication of routine breach-of-contract claims," and in such cases, the courts are confined "to the
    parties' bargain, with no enlargement or enhancement based on state laws or policies external to the

23  agreement.")  Similarly, in *Wells*, a Maryland court found that the defendant may have agreed to
    comply with Subtitle 9 of Maryland's Commercial Law Article, an otherwise preempted state law,

24  where the parties' credit card agreement *specifically and expressly* provided that Subtitle 9 of the
    Commercial Law Article, in addition to federal law, governed the parties' agreement. *Wells*, 832

25  A.2d at 813.  Thus, *Wells* stands only for the unremarkable proposition that parties to a transaction
    may voluntarily undertake to follow otherwise preempted state law by *explicitly* identifying in the

26  contract the state law to which they agree to be bound. Of course, there is no provision in the
    contract here that even refers to Rees-Levering, much less states that Rees-Levering's post-

27  repossession notice provisions apply.

28

1

**E.    The FTC Holder Rule Does Not Impose A Contractual Obligation to Comply With A Preempted Statute.**

2

3       Plaintiff may contend that section 2983.2 of Rees-Levering is nonetheless applicable to

4    Chase under the FTC's holder rule, but any such argument fundamentally misreads the rule.  The

5    FTC holder rule was intended to subject the assignee of a retail credit sale contract to all of the

6    claims and defenses that could have been asserted against the original seller.  *See* 16 C.F.R.

7    § 433.2.  This is, in fact, how the plain language of the FTC holder notice (required by the FTC

8    regulation) reads:

9           NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
            SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR
10          COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES
            OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.

11   *Id.*  The holder rule thus preserves claims that arose against the seller, so that a claim that could be

12   brought but is not yet brought at the time of assignment of the contract is not eliminated by that

13   assignment.  *See, e.g., Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.*,

14   168 F.3d 1362, 1365 (D.C. Cir. 1999) ("[T]he Holder Rule requires . . . loans supplying money for

15   the purchase of goods or services . . . arranged by sellers to contain a notice to all loan holders that

16   preserves the borrower's ability to raise claims and defenses against the lender *arising from the*

17   *seller's misconduct*.") (emphasis added); *Riggs v. Anthony Auto Sales, Inc.*, 32 F. Supp. 2d 411, 416

18   (W.D. La. 1998) ("The FTC Holder Rule was, therefore, designed to reallocate the cost of *seller*

19   *misconduct* to the creditor, who is in a better position to absorb the loss or recover the cost from the

20   guilty party--the seller.") (emphasis added).

21       Plaintiff here never had a claim under section 2983.2 that could be asserted against the

22   automobile dealership that sold her the vehicle, and does not now assert such a claim.  The claim

23   that she asserts against Chase could not be asserted against the seller because the seller did not

24   provide an allegedly deficient post-repossession notice.  The FTC holder rule does not mean that a

25   state statutory provision that applies to the seller must therefore apply to the assignee.  The rule is

26   about claims and defenses, not statutory obligations, and thus does not render an otherwise

27   preempted state law, such as Rees-Levering's post-repossession notice requirements, applicable to

28   Chase.

1

### F.    Preemption of Plaintiff's Claims is Consistent with Congressional Intent.

2    Nor can Plaintiff here resort to consumer policy arguments to avoid federal preemption of

3  her claims.  "Consumer protection is not reflected in the case law as an area in which the states

4  have traditionally been permitted to regulate national banks." *Am. Bankers Ass'n v. Lockyer*,

5  239 F. Supp. 2d 1000, 1016 (E.D. Cal. 2002) (holding that NBA preempts state statute intended to

6  protect consumers).  As the Supreme Court has explained, preemption applies regardless of the

7  benefits state law purportedly provides to consumers.  *Franklin Nat'l Bank v. New York*, 347 U.S.

8  373, 378-79 (1954); *see also Abel*, 313 F. Supp. 2d at 725-26 (holding that NBA and OCC

9  regulations preempt state consumer protection statute).  OCC regulations make clear that state

10  consumer protection laws are preempted in favor of uniform, federal enforcement.  *Abel*,

11  313 F. Supp. 2d at 728.  Accordingly, it is irrelevant that Plaintiff's claims are purportedly based on

12  a consumer protection state law.  The state claims asserted in the Complaint are preempted by the

13  NBA and OCC regulations and thus should be dismissed with prejudice.

14  ## II.    PLAINTIFF LACKS STANDING TO ASSERT HER UCL CLAIM.

15    Plaintiff's cause of action for unlawful, unfair, and fraudulent business practices in

16  violation of California Business and Professions Code section 17200 *et seq*. is subject to dismissal

17  for the independent reason that she has failed to demonstrate that she has standing to bring a claim

18  under the UCL.  Following the passage of Proposition 64, to have standing under the UCL, a

19  plaintiff (i) must have suffered an injury in fact, (ii) must have lost money or property, and

20  (iii) must demonstrate causation (i.e., the challenged practice must have caused the loss of money

21  or property).  *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008).  Furthermore, a plaintiff must

22  plead sufficient facts to establish that she satisfies the standing requirements under the UCL.

23  *County of Los Angeles v. Ferguso*n, 94 Cal. App. 3d 549, 558 (1979) (holding that complaint

24  inadequately pled standing to sue where complaint contained insufficient factual allegations).

25

26

### A.    The Complaint Fails Adequately to Allege an Injury in Fact and a Loss of Money or Property.

27    The UCL requires a specific form of "injury in fact," namely, a loss of money or property,

28  *Hall*, 158 Cal. App. 4th at 849, and the plaintiff must show either prior possession of or an

1    ownership interest in the money or property allegedly lost, *Madrid v. Perot Sys. Corp.*, 130 Cal.

2    App. 4th 440, 455 (2005).  The Complaint falls short of satisfying these pleading requirements.

3          Although Plaintiff alleges in conclusory fashion that she "has suffered injury in fact and

4    has lost money or property as a result of the unlawful, unfair and fraudulent acts and practices"

5    challenged herein (Compl. ¶¶ 10, 36), she alleges no facts in support of that bare allegation.  She

6    does not allege that Chase did not have a right to repossess the vehicle.  Nor does she allege that

7    she paid any portion of the deficiency balance Chase allegedly assessed against her.  Although she

8    alleges generally that "Chase regularly collects deficiencies from, and obtains deficiency judgments

9    against members of the general public" (Compl. ¶ 18), she carefully avoids any direct allegation

10   that Chase collected any deficiency payments *from her*.  Given the absence of any factual

11   allegation that, if true, would demonstrate that Plaintiff lost money or property as a result of

12   Chase's practices, Plaintiff's UCL claim must be dismissed.[7]

13        **B.     Plaintiff Fails to Allege Causation as Required by the UCL.**

14          Since the passage of Proposition 64, courts have concluded that, to have standing under

15   the UCL, the plaintiff's loss of money or property must have been caused by the business practice

16   challenged.  *See Hall*, 158 Cal. App. 4th at 849 ("We hold the phrase 'as a result of' in the UCL

17   imposes a causation requirement; that is, the alleged unfair competition must have caused the

18   plaintiff to lose money or property.") (citations omitted); *Laster v. T-Mobile United States, Inc.*,

19   407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) ("The language of the UCL, as amended by

20   Proposition 64, makes clear that a showing of causation is required as to each representative

21   plaintiff. . . .  Because Plaintiffs fail to allege they actually relied on false or misleading

22   advertisements, they fail to adequately allege causation as required by Proposition 64."); *O'Brien v.

23   Camisasca Auto. Mfg., Inc.*, 161 Cal. App. 4th 388, 400 (2008) ("The phrase 'as a result of' in its

24

25   _____

26   [7] Similarly, although Plaintiff alleges in general that Chase wrongfully reports deficiencies to
     credit reporting organizations, she does not allege that Chase ever reported any information *about*
27   *her*.  (*See* Compl. ¶ 20.)  Thus, she also lacks standing to bring a claim arising from the allegedly
     wrongful reporting of deficiencies to credit organizations.

28

1  plain and ordinary sense means 'caused by' and requires a showing of a causal connection or

2  reliance on the alleged misrepresentation.") (citations omitted).

3       Nowhere in the Complaint does Plaintiff allege that any alleged defect in the NOI caused

4  her to make a payment she otherwise would not have made, or caused her to refrain from making a

5  payment she otherwise would have made.  Nor does she allege that, "but for" the allegedly

6  defective NOI, she would have redeemed the repossessed vehicle and thereby avoided its sale by

7  Chase.  Such facts, if true, could easily be pled.  Instead, they are conspicuously absent from the

8  Complaint.  Accordingly, Plaintiff has failed to allege causation and Plaintiff's UCL claims should

9  be dismissed for lack of standing.

10  **III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE REES-LEVERING ACT.**

11

12       **A.    No Private Right of Action Is Available for Violation of Rees-Levering's Post-Repossession Notice Requirements.**

13       Plaintiff purports to state an independent cause of action for violation of Rees-Levering's

14  post-repossession notice requirements.  However, no such private right of action exists.  As such,

15  Plaintiff's "cause of action" for violation of Rees-Levering should be dismissed.

16       Rees-Levering provides for affirmative claims based on the vehicle sale contract itself or

17  based on alleged wrongs committed in the repossession of the car.  For example, section 2983

18  provides that if the creditor violates certain Rees-Levering provisions concerning the *making* of the

19  conditional sale contract, then the contract is unenforceable, and "the buyer may recover from the

20  seller the total amount paid, pursuant to the terms of the contract."  Cal. Civ. Code § 2983.  That

21  section clearly provides for an action for rescission of the contract.  Other provisions of the statute

22  contemplate limited affirmative claims.  *See, e.g.,* Cal. Civ. Code § 2983.4 (discussing reasonable

23  attorney's fees for an action brought "on a contract or purchase order"); Cal. Civ. Code

24  § 2984.4(a) (defining venue for an action brought "on a contract or purchase order"); Cal. Civ.

25  Code § 2983.7(c) (prohibiting creditor from requiring buyer to waive, among other things, "any

26  right of action against the seller or holder of the contract . . . for any illegal act committed in the

27  collection of payments under the contract or in the repossession of the motor vehicle").

28

1       In stark contrast, nothing in section 2983.2 provides for a private right of action based on a

2   failure to comply with Rees-Levering's post-repossession notice requirements.  The only remedy

3   expressly contemplated by Rees-Levering for such a failure is the creditor's forfeiture of the right

4   to a deficiency balance.  Indeed, the statute provides that a failure to comply with its notice

5   requirements operates as a complete defense to an action for a deficiency judgment.  Cal. Civ. Code

6   § 2983.8 ("no deficiency judgment shall lie" in the event that the disposition of the vehicle was not

7   in conformity with the chapter); Cal. Civ. Code § 2983.2(a) ("those persons shall be liable for any

8   deficiency after disposition of the repossessed or surrendered motor vehicle only if the notice . . .

9   does all of the following: [describing requirements of notice]").

10      Where, as here, a statute is silent as to the existence of a private right of action, that silence

11  creates a strong—perhaps irrefutable—presumption that the legislature did not intend to create a

12  private right of action and hence no such right exists.  *Moradi-Shalal v. Fireman's Fund Ins. Cos.*,

13  46 Cal. 3d 287, 300 (1988); *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 132

14  (1997) ("[I]f the Legislature had truly intended to create a private right to sue 'one would

15  reasonably have expected that the Legislature simply would have directly imposed such liability in

16  clear, understandable, unmistakable terms, as it has done in numerous other statutes'.").  Indeed,

17  where the language of the statute does not indicate an intent to create a private right of action, "a

18  party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable,

19  burden of persuasion."  *Id.* at 133; *Aaron v. Aguirre*, No. 06-CV-1451, 2007 U.S. Dist. LEXIS

20  16667, *46-47 (S.D. Cal. Mar. 8, 2007) (same).

21      Given that the legislature unambiguously provided in the statute for affirmative claims "on

22  the contract," it plainly knew how to provide for a cause of action for violation of the statute's post-

23  repossession notice requirements, if it so intended.  *See Matoff v. Brinker Rest. Corp.,* 439 F. Supp.

24  2d 1035, 1037 (C.D. Cal. 2006) ("when the Legislature intends to create a private right of action, it

25  will do so 'directly' and 'in clear, understandable, unmistakable terms.'")  The absence of an

26  explicit private right of action for violation of section 2983.2 was not a legislative oversight, but

27  rather, must be viewed as intentional.  Accordingly, no private right of action may be recognized

28  here.

1   Other fundamental canons of statutory construction compel the same conclusion.  "Under

2   the statutory construction doctrine of *expressio unius est exclusio alterius*, the expression of certain

3   things in a statute necessarily involves exclusion of other things not expressed."  *Blue v. City of Los*

4   *Angeles*, 137 Cal. App. 4th 1131, 1142 (2006); *see also Boudette v. Barnette*, 923 F.2d 754, 757

5   (9th Cir. 1991) (the doctrine of *expressio unius est exclusio alterius* "as applied to statutory

6   interpretation creates a presumption that when a statute designates certain persons, things, or

7   manners of operation, all omissions should be understood as exclusions").  "The principle

8   [underlying this] rule 'is that when legislation expressly provides a particular remedy or remedies,

9   courts should not expand the coverage of the statute to subsume other remedies.'"  *People v.*

10  *Narron*, 192 Cal. App. 3d at 724, 737-38 (1987) (quoting *National R.R. Passenger Corp. v. Nat'l*

11  *Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S. Ct. 690 (1974)).

12  Nowhere does Rees-Levering suggest, let alone expressly provide, that an affirmative right

13  of action exists for violation of its post-repossession notice requirements.  No court has ever

14  recognized such a cause of action.  Based on fundamental principles of statutory interpretation, it is

15  clear that a defective NOI cannot give rise to an affirmative claim for violation of Rees-Levering.

16  A borrower may not use section 2983.2 as a sword, but rather may only assert it as a shield against

17  a deficiency judgment.

18

19  **B.    Even if There Were a Private Right of Action for Violation of Rees-Levering's Post-Repossession Notice Requirements, Plaintiff Fails to State a Claim.**

20  Even if an independent, affirmative action for violation of Rees-Levering's post-

21  repossession notice requirements were cognizable, Plaintiff could not maintain such an action

22  because she fails to allege how the alleged violation caused her any damage.  Although Plaintiff

23  alleges in a very general—and conclusory—manner that Chase's NOI deprived her of "the right to

24  make an informed decision about whether to redeem/reinstate [her] contract[]" (Compl. ¶ 47), she

25  offers no factual allegations in support of that legal conclusion.  For example, she does not allege

26  that she attempted to submit a post-repossession payment to Chase, but could not determine from

27  the NOI the proper amount to pay or the address to which the payment should be sent.  Nor does

28  she allege, for example, that she attempted to redeem the vehicle, but was unsuccessful in doing so

because the NOI did not provide instructions on where to pay the $15 governmental fee. Thus, even if the law did recognize a private right of action for an alleged failure to comply with the disclosure requirements of section 2983.2 of Rees-Levering, given that the Complaint does not even suggest that Plaintiff made any attempt to avoid the post-repossession sale of her vehicle and subsequent assessment of a deficiency balance against her, Plaintiff has not adequately stated such a claim. Accordingly, Plaintiff's claim for violation of Rees-Levering should be dismissed.

## IV.      THE COMPLAINT FAILS TO STATE A CLAIM FOR CONVERSION.

Plaintiff's cause of action for conversion should be dismissed for the independent reason that she fails to allege that Chase refused a demand to return the vehicle to her. To state a claim for conversion, a plaintiff must allege (1) ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages. *Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979). Where a complaint alleges that the plaintiff is entitled to possession of property, it must also allege that the defendant *refused plaintiff's demand to return the property*. *In re Cruz*, 198 B.R. 330, 333 (S.D. Cal. 1996) ("Where a person is entitled to possession of property and demands the return of it, the unjustified refusal to return the property is a conversion.")

Plaintiff does not challenge Chase's repossession of the vehicle.[8] Instead, she alleges that, after the repossession, she would have been "entitled to immediate possession" of the vehicle *if* she had paid the proper redemption or reinstatement amount. (Compl. ¶ 52.) However, because she does not allege that she made any such payment, or even attempted to, and that Chase subsequently failed to turn over the vehicle, she has failed to state a claim for conversion.

Plaintiff's claim for conversion also independently fails because the Complaint is bereft of any allegation that Chase refused a demand to return the vehicle. *See In re Cruz*, 198 B.R. at 333 (holding that recovery for conversion requires a demand from plaintiff for return of property and

---

[8] Indeed, the vehicle sale contract grants Chase a security interest in the vehicle, and expressly provides that Chase may repossess the vehicle in the event of the borrower's default. (*See* Christopher Decl., Ex. A at pp. 1, 3, 5 & Ex. B at pp. 1-2.)

1  refusal of demand by defendant); *Flennaugh v. Heinrich*, 89 Cal. App. 2d 214, 222 (1948) (holding

2  that when defendant was lawfully in possession of property, plaintiff's "demand for its possession

3  is necessary to create a liability for conversion or unlawful withholding of the property.").

4          Plaintiff may attempt to rely on *Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985), to

5  save her claim for conversion, but that decision only underscores the pleading deficiencies in the

6  Complaint.  The court in *Cerra* echoed the well-established rule that, where the defendant lawfully

7  acquired possession of the property, the defendant's failure to turn over possession to the plaintiff

8  only constitutes conversion where the plaintiff demands the property from the defendant, and such

9  demand is refused.  72 Cal. App. 3d at 609.  The borrower in *Cerra* could maintain an action for

10  conversion following the repossession and sale of his vehicle because he had offered to bring his

11  payments current and demanded restoration of the vehicle after he received the NOI, but defendant

12  rejected both his offer to bring his account current and his tender to payoff the entire contract

13  balance, and refused to turn over the vehicle.  *Id.* at 606-07.  In stark contrast, Plaintiff here does

14  not allege that she made any demand of Chase, or otherwise made any attempt to recover the

15  vehicle.  Rather, she merely alleges that the omission of certain items in Chase's NOI constituted a

16  conversion.  (Compl. ¶ 53.)  Plaintiff's claim for conversion should thus be dismissed.

17  **V.      THE COMPLAINT FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF.**

18          The Declaratory Judgment Act (the "Act") governs Plaintiff's claim for declaratory relief.

19  *Lopez v. GMAC Mortg. Corp.,* No. C 07-3911, 2007 U.S. Dist. LEXIS 84004, *5 (N.D. Cal. Nov.

20  1, 2007) ("once a case is removed to federal court, whether to grant declaratory relief becomes a

21  procedural matter implicating the Declaratory Judgment Act").  The Act provides that "[i]n a case

22  of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the

23  rights and other legal relations of any interested party seeking such declaration, whether or not

24  further relief is or could be sought."  28 U.S.C. § 2201(a).  The Act authorizes declaratory relief

25  only in "a case of actual controversy."  *Id.*; *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240,

26  57 S. Ct. 461 (1937).  To satisfy this standard, at a minimum, the "possible injury" to the party

27  seeking declaratory relief must be "certainly impending" rather than "speculative and remote."

28  *Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir. 1991) (quotation omitted).

DEFENDANT JPMORGAN CHASE BANK, N.A.'S
MOTION TO DISMISS - Case No. 08-CV-3099 JW
la-983546

22

1    Furthermore, "for purposes of declaratory relief, 'past exposure to illegal conduct does not

2    in itself show a present case or controversy… if unaccompanied by any continuing, present adverse

3    effects.'"  *Faurot v. Barton*, No. 06-cv-01005, 2007 U.S. Dist. LEXIS 78907, *30 (E.D. Cal. Nov.

4    28, 2007) (citation omitted).  In other words, declaratory relief is inappropriate where the alleged

5    harm has already occurred, and thus could be remedied through adjudication of other causes of

6    action.  *Philips Med. Capital, LLC v. Medical Insights Diagnostics*, 471 F. Supp. 2d 1035, 1048

7    (N.D. Cal. 2007) ("adjudication of the issues raised in …other claims would fully and adequately

8    determine all matters actually in controversy between the parties"); *Fitzpatrick v. Gates*, No. CV

9    00-04191, 2007 U.S. Dist. LEXIS 13774, *17-18 (C.D. Cal. April 19, 2001) (dismissing putative

10   class claim for declaratory relief where only past injury was alleged).

11   Plaintiff's claim for declaratory relief here is too speculative to satisfy the exacting

12   pleading standards required by the Act.  Plaintiff does not in any way allege that she will suffer an

13   impending injury as a result of Chase's practices.  Indeed, it is evident from the face of the

14   Complaint that she seeks relief only for alleged past conduct, to wit, Chase's assessment of a

15   deficiency balance against her following the repossession of her vehicle, the sending of an NOI,

16   and subsequent sale of her vehicle.  Without additional allegations establishing that Plaintiff is

17   *presently* suffering injury, or that she faces any such injury in the *future*, Plaintiff has not alleged

18   sufficient facts to sustain a claim for declaratory relief.  Accordingly, the cause of action for

19   declaratory relief should be dismissed.

20   **VI.    THE LITIGATION PRIVILEGE BARS THE COMPLAINT.**

21   Assuming that Rees-Levering applies here, Plaintiff expressly alleges that the sending of

22   an NOI is an indispensable prerequisite to the filing of a lawsuit to collect a deficiency following

23   the sale of a repossessed motor vehicle.  (Compl. ¶¶ 13-14.)  Indeed, the document Chase sent to

24   Plaintiff advised her that she "MAY BE SUBJECT TO SUIT AND LIABILITY IF THE

25   AMOUNT OBTAINED UPON DISPOSITION OF THE VEHICLE IS INSUFFICIENT TO PAY

26   THE CONTRACT BALANCE AND ANY OTHER AMOUNTS DUE."  (Compl., Ex. A.)

27   Plaintiff's Complaint here is predicated entirely on this pre-litigation communication.  As such,

28   Plaintiff's causes of action are all based on communications undertaken in anticipation of

1  litigation—communications that are absolutely protected pursuant to the "litigation privilege"—and

2  thus should be dismissed.

3      Section 47(b)(2) of the California Civil Code creates an absolute privilege for a

4  "publication or broadcast . . . (b) [i]n any . . . (2) judicial proceeding." Cal. Civ. Code § 47(b)(2).

5  It is black-letter law that the initiation and maintenance of a lawsuit are absolutely privileged under

6  section 47(b)(2). *Rubin v. Green*, 4 Cal. 4th 1187, 1195 (1993). It is equally well-settled that

7  "communications with 'some relation' to an anticipated lawsuit" also fall squarely within the

8  privilege. *Id.* at 1194. If a pre-litigation statement "is made with a good faith belief in a legally

9  viable claim and in serious contemplation of litigation, then the statement is sufficiently connected

10 to litigation and will be protected by the litigation privilege." *Aronson v. Kinsella*, 58 Cal. App. 4th

11 254, 266 (1997). To that end, the litigation privilege has been broadly applied to pre-litigation

12 requests for payment in settlement of a liability. *See Lerette v. Dean Witter Organization, Inc*.,

13 60 Cal. App. 3d 573, 576-77 (1976) (affirming dismissal where litigation privilege barred action

14 based on communication threatening suit); *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 169 (1999)

15 (affirming dismissal and explaining that "[t]he privilege has been broadly construed to apply to

16 demand letters and prelitigation communications").

17     With the exception of properly pleaded claims for malicious prosecution, the litigation

18 privilege of section 47(b)(2) applies to virtually all causes of action. *Silberg v. Anderson*, 50 Cal.

19 3d 205, 215 (1990); *Rubin*, 4 Cal. 4th 1187 (applying litigation privilege to UCL cause of action);

20 *Cargill Inc. v. Progressive Dairy Solutions, Inc*., No. CV-F-07-0349, 2008 U.S. Dist. LEXIS

21 46972, *55 (E.D. Cal. May 29, 2008) (same). The privilege is absolute and may not be overcome

22 by allegations that the communications were "fraudulent, perjurious, unethical, or even illegal."

23 *Kashian v. Harriman*, 98 Cal. App. 4th 892, 920 (2002). So critical are its protections that "any

24 doubt as to whether the privilege applies is resolved in favor of applying it." *Morales v. Coop. of

25 Am. Physicians, Inc*., 180 F.3d 1060, 1062 (9th Cir. 1999).

26     Here, the entire Complaint arises from communications protected by the litigation

27 privilege: the NOI Chase sent to Plaintiff, Chase's subsequent pre-litigation demand for payment

28 of the deficiency balance from Plaintiff, and Chase's act of filing and maintaining actions for

1 deficiency judgments against putative class members.  Chase's NOI expressly advised Plaintiff that

2 she would be "subject to suit and liability if the amount obtained upon disposition of the vehicle is

3 insufficient to pay the contract balance" (Compl., Ex. A), and when the sale proceeds proved

4 insufficient, Chase sought payment of the deficiency balance she owed.  Chase's pre-litigation

5 attempts to obtain payment in settlement of a liability fall squarely within the litigation privilege.

6 *See Lerette*, 60 Cal. App. 3d at 576-77; *Knoell*, 76 Cal. App. 4th at 169.

7         Plaintiff may contend that the litigation privilege does not apply here because she has

8 alleged that Chase misrepresented its compliance with Rees-Levering during the course of judicial

9 proceedings against members of the putative class (*see* Compl. ¶ 18), but such an allegation, even if

10 true, is legally irrelevant and inconsistent with an absolute privilege.  *See Kashian*, 98 Cal. App. 4th

11 at 920; *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) (affirming application of the litigation

12 privilege to cause of action "alleging the filing of false or perjurious testimony or declarations").[9]

13         Simply put, Plaintiff cannot overcome the protections of the litigation privilege, which

14 categorically bars the causes of action asserted in the Complaint.  Accordingly, the motion to

15 dismiss should be granted with prejudice for this additional and independent reason.

16                          **CONCLUSION**

17         For these reasons, Chase respectfully requests that its motion to dismiss be granted with

18 prejudice.

19   Dated: July 10, 2008                    MORRISON & FOERSTER LLP

20

21                                    By:   /s/ James R. McGuire
                                          James R. McGuire

22                                    Attorneys for Defendant
                                     JPMORGAN CHASE BANK, N.A.,
23                                   *Erroneously sued as*
                                     JPMORGAN CHASE BANK dba
24                                   CHASE AUTOMOTIVE FINANCE

25

26 [9] The privilege, of course, only bars attempts to use Rees-Levering as a sword, as Plaintiff attempts
   to do here.  It is not Chase's position that, in a case in which Rees-Levering otherwise applied, it
27 could not be used as a shield—as it was actually intended by the Legislature.

28